***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Jones. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Jones.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. PMA, Inc., was the carrier on risk at all relevant times herein.
4. Plaintiff's average weekly wage was $280.00 per week.
5. Plaintiff's medical records were stipulated into evidence as Stipulated Exhibit 1. This documentation consists of information of records from Forsyth Memorial Hospital, Orthopaedic Specialists of the Carolinas, HealthSouth, Maplewood Family Practice, Medical Park Hospital, and Various Medical Bills.
6. Industrial Commission Forms and filings relating to this case were stipulated into evidence as Stipulated Exhibit 2.
7. Workers' Compensation notes, Industrial Commission forms, out of work notes and other documentation were stipulated into evidence as Stipulated Exhibit 3.
8. A letter to PMA, plaintiff's letter of representation and defense counsel's letter to plaintiff's counsel concerning medical records were stipulated into evidence as Stipulated Exhibit 4.
9. Plaintiff's Responses to Defendant's Discovery Requests were stipulated into evidence as Stipulated Exhibit 5.
10. The issues before the undersigned are: (i) whether plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer; (ii) if so, what compensation, if any, is due plaintiff; and (iii) what compensation, if any is plaintiff entitled?
 *********** EVIDENTIARY RULINGS
The objections raised in the depositions of R. L. Montgomery, M.D., Frank Moyer, M.D., and F. Edward Pollock, Jr., M.D., are OVERRULED.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was forty-five (45) years old. Plaintiff was employed with defendant-employer in a position that required her to staple separate materials together to form door jams while standing at a table. Plaintiff moved the staple door jams to a machine on a buggy and occasionally assisted a co-worker in moving heavy solid core doors with the buggy.
2. On January 17, 2002, plaintiff returned to work from being out of work for more than a week due to the flu. While ill, plaintiff consumed a great deal of fluids.
3. On January 19, 2002, plaintiff was helping another worker push a heavy buggy stacked with solid core doors. The wheels of the buggy became locked in a crack in the floor of the shop. Plaintiff used her right foot to push the buggy in order to dislodge the buggy from the floor. As plaintiff pushed the buggy with her foot, she immediately felt an onset of pain in her right knee from twisting it and from the pressure she applied to her foot. As she twisted her knee, plaintiff heard a popping sound in her right knee. Plaintiff paused from her work activities as result of the popping and twisting her knee.
4. Believing her right knee pain would subside, plaintiff continued working for the remainder of her shift. Although plaintiff continued to experience knee pain throughout the remainder of her shift, she was successful in completing her assigned duties.
5. Plaintiff assumed she had pulled a muscle and with time the pain would subside. Plaintiff did not notify her supervisors on the day of the injury as to the accident.
6. Plaintiff's knee was swollen overnight and the following morning she sought medical attention at Forsyth Medical Center.
7. Plaintiff was apprehensive about reporting the injury as result of having received resistance in 1994 because of new symptoms of her carpal tunnel syndrome. Plaintiff indicated in her job application with defendant-employer that she had suffered from carpal tunnel syndrome prior to working for defendant-employer.
8. Plaintiff feared she would be terminated if she had any additional absences because she was out of work for numerous non-related illnesses in 1999. Plaintiff suffered from severe acid reflux disease, chronic asthma, chronic bronchitis, high blood pressure, depression and irritable bowel syndrome.
9. On January 19, 2000, plaintiff presented to Forsyth Medical Center Emergency Department and complained of right knee and flu symptoms without a report of an injury to work. R. L. Montgomery, M.D., evaluated plaintiff and the examination of her right knee indicated swelling and tenderness and she was diagnosed with acute right knee pain and bronchitis. Dr. Montgomery opined plaintiff's symptoms were consistent with traumatic injury to the knee. Dr. Montgomery further opined plaintiff had acute knee pain which was present a short time after the incident and was not indicative of long-standing knee problem. Dr. Montgomery referred plaintiff to Orthopaedic Specialist of the Carolinas for treatment.
10. There is a discrepancy in regard to the date of the onset of the symptoms and the medical records. These medical records were prepared by a physician's assistant in the Emergency Department and failed to indicate a specific calendar date for the onset of symptoms.
11. On January 21, 2000, plaintiff informed defendant-employer's safety director, Bobby Faw, she had injured her knee at work. Mr. Faw did not request plaintiff to provide a description of the event that resulted in the injury or request her to provide any details regarding the incident or circumstances surrounding the injury. Mr. Faw did not request plaintiff to sign a statement as to how she injured her knee or inquire as to the severity of her injury. Mr. Faw did denote the number of days that she had worked in 2000. Mr. Faw indicated plaintiff was a good employee when she was working. Mr. Faw never received any information indicating plaintiff had any knee problems due to work prior to January 19, 2000.
12. Plaintiff never indicated knee problems or knee injury to her family physicians at Maplewood Family Practice from October 1990 through January 21, 2000.
13. On January 21, 2000, plaintiff sought treatment from her family physician, Frank Moyer, M.D., Maplewood Family Practice. Plaintiff did indicate to Dr. Moyer's staff that she had injured her knee at work.
14. After an examination, Dr. Moyer verified plaintiff had injured her knee at work. Dr. Moyer was aware she had been referred to an orthopaedist and as result did not go into great detail as to a description of the injury at work. The physical exam revealed swelling in the right knee and he diagnosed plaintiff with a possible torn meniscus. Dr. Moyer determined the swelling was due to a suspected torn cartilage. Dr. Moyer opined the medical condition that plaintiff presented on January 21, 2000 was due to the trauma she sustained from the injury at work.
15. Plaintiff presented to F. Edward Pollock, Jr., M.D., an orthopedist at Orthopaedic Specialists of the Carolinas, for an examination. Dr. Pollock determined plaintiff had tenderness over the right knee. Plaintiff indicated she had intense pain that was sharp and throbbing. Plaintiff further indicated to Dr. Pollock that she had injured her knee at work when she twisted her knee and had been in pain since the time of the injury. Dr. Pollock treated plaintiff's knee with injections, pain medications and a knee sleeve. Dr. Pollock's conservative treatment was unsuccessful and he recommended arthroscopic surgery. The surgery was performed on March 3, 2000 at which time Dr. Pollock smoothed the damaged and rough cartilage on the end of plaintiff's patella to reduce friction.
16. After March 1, 2000, plaintiff's condition initially improved but then deteriorated. Plaintiff continued to suffer from tenderness, pain, swelling and occasional popping. Dr. Pollock prescribed medication, physical therapy, and injections in order to try to deal with these symptoms.
17. On October 5, 2000, Dr. Pollock performed a second arthroscopic surgery on plaintiff's right knee. Dr. Pollock indicated plaintiff had more chondromalacia of the medial femoral condyle, a loose piece of material and irritation of the lining of her joint. Dr. Pollock opined plaintiff's condition was consistent with having suffered an injury at work. Dr. Pollock further opined his diagnosis was consistent with the initial diagnosis by Dr. Montgomery at the Forsyth Medical Center Emergency Department. Dr. Pollock indicated the location of the chondromalacia and the paucity of the complaints of knee problems by plaintiff before the history of an acute event at work further supported the determination that she in fact had an acute problem in the patella femoral joint.
18. Dr. Moyer took plaintiff out of work from January 21, 2000 to her appointment on February 1, 2000. Pursuant to Dr. Pollock's direction, plaintiff was also out of work from February 1, 2000 through August 1, 2000.
19. On August 1, 2000, Dr. Pollock restricted plaintiff to light duty including no standing for prolonged periods, no bending and no stooping.
20. On August 4, 2000, defendant-employer informed plaintiff she was terminated and would not be offered any job. Plaintiff was in contact with the employer prior to August 4, 2000. Plaintiff telephoned defendant-employer in February, March, June, July and August of 2000.
21. Plaintiff contacted defendant-employer's safety director on August 2, 2000 having received light duty restrictions and the ability to return to work.
22. Defendant-employer mailed plaintiff a typed statement indicating she was terminated from defendant-employer on August 11, 2000.
23. Dr. Pollock revised his recommendation for light duty work after the arthroscopic surgery on October 5, 2000.
24. At the time of the hearing before the Deputy Commissioner, plaintiff had not received any vocational rehabilitation from defendant-employer. Plaintiff had a seventh grade education and attempted to receive employment from several businesses but was unsuccessful in locating any suitable employment. Plaintiff contacted Goodwill Industries, Food Lion grocery store, Hilda Lane Cleaning Service and Four Brothers Convenience Store.
25. Dr. Pollock indicated plaintiff was unable to work from the date of her injury through May 6, 2003. Dr. Pollock placed restrictions that plaintiff should not return to employment where she would be required to stand for eight (8) hours a day.
26. On June 1, 2001, plaintiff was assigned permanent work restrictions by Dr. Pollock.
27. Plaintiff's right knee condition has not adequately improved and Dr. Pollock has recommended a third arthroscopic surgery. Dr. Pollock is of the opinion plaintiff is disabled and without the third surgery there may not be any possibility of her ability to be able to return to work.
28. Dr. Pollock assigned a ten (10%) percent permanent partial disability to plaintiff's right leg on February 13, 2001. David O'Brian, Jr., M.D., concurred with Dr. Pollock's permanent partial disability rating.
29. Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with defendant-employer on January 19, 2000.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment on January 19, 2000. N.C. Gen. Stat. § 97-2(6).
2. As a result of her compensable injury by accident, plaintiff is entitled to temporary total disability compensation at the rate of $186.76 per week for the period beginning January 26, 2000 and continuing until the plaintiff returns to work or until further order of the Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff was terminated while plaintiff was released to light-duty work and was still receiving care from her treating physician. Defendant-employer did not make light duty work available to plaintiff. Plaintiff's termination was not a constructive refusal of appropriate work within plaintiff's restrictions. N.C. Gen. Stat. § 97-32.
4. Defendant is entitled to receive a credit for payment of private disability benefits to plaintiff. N.C. Gen. Stat. §97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay temporary total disability compensation to plaintiff at the rate of $186.76 per week for the period beginning January 26, 2000 and continuing until the plaintiff returns to work or until further Order of the Commission. Compensation due which has accrued shall be paid in a lump sum subject to attorney's fees hereinafter provided. Defendants are entitled to receive a credit for the disability compensation that has been paid to plaintiff.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury by accident on January 19, 2000 for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. A reasonable attorney's fee in the amount of twenty-five (25%) percent of the compensation due plaintiff under paragraph one of this award is approved for plaintiff's counsel. Thereafter, every fourth check shall be deducted from the sum due plaintiff and paid directly to his counsel. Consideration and designation of this attorney's fee contemplates that the counsel for plaintiff shall continue and is hereby ORDERED to monitor the submission of medical expenses to defendant/employer.
4. Defendants shall pay the costs of this action.
This the ___ day of February, 2004.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ THOMAS J. BOLCH COMMISSIONER